The plaintiff, Billy Joe Camp, appeals from a summary judgment in favor of defendants William R. Yeager, Jr., and Timbes Yeager, Inc., in a defamation action.
In the 1990 election for secretary of state, Camp, the Democratic Party's nominee, faced Perry Hand, the Republican Party's nominee. Hand had employed Yeager of the Mobile advertising firm Timbes Yeager, Inc., as his media consultant. Yeager wrote and produced a television commercial that is at issue in this case.
The commercial opened with Hand standing in a cemetery and consisted of the following text:
 "[Hand]: Since becoming secretary of state, I've been working to keep these folks from voting.
 "[Voice over]: While Perry Hand's been fighting to clean up the voters' list and curb election fraud, what's his opponent done? When Billy Joe Camp was president of the Public Service Commission, we got hit with three rate increases. As a reward, Georgia Power paid him over 700 thousand dollars in consulting fees. A clear choice. Perry Hand — a tough secretary of state who's cracking down on corrupt politics."
The commercial was broadcast several times during the week of October 2-8, 1990, on television stations in Birmingham, Huntsville, Mobile, and Montgomery.
Camp had served as president of the Public Service Commission ("PSC") in the early 1980s. During that time, Alabama Power Company received three rate increases. Camp voted against each rate increase request by Alabama Power; however, those rate increases were granted pursuant to orders of this Court.
Sometime after Camp left the PSC, he started a consulting firm. He entered into an agreement with Georgia Power Company to perform economic development work, labor relations consulting, and consulting on public relations and regulatory affairs pertaining to nuclear generation of electric power. Camp's firm received payments in excess of $700,000 for these services. On May 14, 1990, an article appeared in the publication Bill Shipp's Georgia revealing the payments. The article was based on information from the annual filings of Georgia Power Company.
Shortly after the November election, Camp brought this action alleging defamation. The complaint sought compensatory and punitive damages for the malicious publication of false statements that Camp alleged were contained in the television commercial. The complaint sought damages from four defendants: Yeager; Timbes Yeager, Inc.; Hand; and Jack Edwards, chairman of Hand's campaign.
Yeager and Timbes Yeager filed a motion for summary judgment. The trial court granted the motion, and the judgment was made final pursuant to Rule 54(b), A.R.Civ.P. Camp appealed.
On appeal Camp raises two issues: (1) whether the television commercial contained an actionable defamatory statement; and (2) whether Camp produced sufficient evidence of actual malice to withstand the appellees' motion for summary judgment.
 Actionable Statement
A summary judgment is appropriate upon a showing that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. In reviewing a summary judgment, this Court will view the evidence in the light most favorable to the nonmovant and will resolve all reasonable doubts against the movant.Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256
(Ala. 1991).
Whether a communication is reasonably capable of a defamatory meaning is, in the first instance, a question of law.Harris v. School Annual Publishing Co., 466 So.2d 963, 964
(Ala. 1985). "Thus, if the communication is not reasonably capable of a defamatory meaning, there is no issue of *Page 927 
fact, and summary judgment is proper." Id. at 964-65. However, if the trial court finds that the statement is reasonably capable of a defamatory meaning, "it is then for the jury to say whether [the statement was] in fact so understood." W. Page Keeton, et al., Prosser and Keeton on Torts § 111, at 781 (5th ed. 1984).
The test to factually determine the defamatory nature of a statement is that meaning that would be ascribed to the language by a reader or listener of "average or ordinary intelligence, or by a common mind." Loveless v. Graddick,295 Ala. 142, 325 So.2d 137, 142 (1975). In determining whether the television commercial at issue was libelous,[1]
 "[its] actionable character is to be taken in [its] natural meaning according to the sense in which [it] appears to have been used, and the idea [it] convey[s] to those who heard and saw [it]. [It is] not to be measured by [its] effect when subjected to the critical analysis of a trained legal mind, but must be construed and determined by [its] natural and probable effect upon the mind of the average television viewer."
Gray v. WALA-TV, 384 So.2d 1062, 1065 (Ala. 1980).
If the words employed in the allegedly libelous publication are understood to impute dishonesty or corruption to an individual, they are actionable. Id.
Taking the television commercial in its entirety, this Court holds that the television commercial was reasonably capable of a defamatory meaning. Also, after reviewing the entire record, we find that a genuine issue of material fact was presented as to whether such a defamatory meaning was understood.
 Actual Malice
Since New York Times Co. v. Sullivan, 376 U.S. 254,84 S.Ct. 710, 11 L.Ed.2d 686 (1964), it has been clear that the First Amendment requires that, to be actionable, an alleged defamatory statement by a defendant against a public official (now public figures) must be made with actual malice. The present law is equally clear that such actual malice must be shown with "convincing clarity." Since Anderson v. LibertyLobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202
(1986), "clear and convincing" has been the standard mandated not only to the jury sitting for this type of case, but to the trial judge as well in his determination of the defendant's motion for summary judgment. So, we must look to a standard higher than substantial evidence in the present case, because it is written that the First Amendment requires it. We, therefore, leave our substantial evidence test used for summary judgment in most other cases so that we might apply that higher standard in this case.
A close reading of Anderson v. Liberty Lobby, Inc., or, perhaps more appropriately, a "traipsing through the maze," will, we hope, lead to an understanding of the essential requirements and their application to the present case.
The principal requirement of a plaintiff if he is to survive a properly supported motion for summary judgment is that he must satisfy the trial judge that there is a genuine issue ofmaterial fact. The substantive law of the case must be utilized by the trial judge to aid him in determining whether there are critical facts to be determined, disputed facts that could affect the decision of a jury; yet the role of the substantive law must be for the purpose of identifying to the trial judge those facts that are critical to the case.
A trial judge is not required "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," id. at 249,106 S.Ct. at 2511, nor is there any requirement for him to make a finding of fact.
In reversing the summary judgment, we are satisfied that there are facts that are critical to a proper resolution of this case, a resolution that can be made only by a finder of fact — a jury. We find support for our *Page 928 
determination within the following language fromAnderson: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250, 106 S.Ct. at 2511.
The parties agree that Camp is a public figure and as such cannot recover for libel unless he offers proof that the libelous publication was made with "actual malice." See NewYork Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710,11 L.Ed.2d 686 (1964). The term "actual malice" is "synonymous with, and only with, 'knowledge of falsity or reckless disregard of truth or falsity.' " Mobile Press Register, Inc.v. Faulkner, 372 So.2d 1282, 1287 (Ala. 1979) (emphasis in original). Therefore, a false and defamatory statement may be made purposefully and with ill will toward the public figure, and yet the law refuses the public figure a remedy if the statement was made without knowledge of the falsity or without reckless disregard of its truth or falsity. Id. The rationale for this rule is:
 "Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred; even if he did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth."
Id. (quoting Garrison v. Louisiana, 379 U.S. 64, 73,85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964)).
On the particular issue of actual malice in this case, we have looked at the evidence in the record, viewing the evidence in the light most favorable to the nonmovant, Camp, and allowing all reasonable inferences from that evidence, to determine whether the trial court correctly found that Yeager and Timbes Yeager were entitled to a summary judgment based on the issue of actual malice.
In addition to these tests, we have also examined the evidence in search of a genuine issue involving material facts; and we have considered whether those facts are critical; whether they are in dispute on the issue of actual malice; and whether they are facts that can be fairly resolved only by a jury. We have assessed the trial judge's view of the above matters within the framework of the "clear and convincing" standard. We are now compelled to conclude that the trial judge erred when he granted Yeager and Timbes Yeager's motion for summary judgment.
We are satisfied that Camp has presented evidence that, if believed by a jury, would be sufficient to support a finding, by clear and convincing evidence, that Yeager knew that the statement, as understood, was false.
 The Benchmarks
The facts or happenings of this case are largely undisputed. A political campaign was underway; the political advertisement was aired on four television stations in this state; and, most importantly, the statements of the advertisement are without dispute. There are, however, two important factual disputes that a jury must determine in this case: (1) whether the statement was understood as imputing some sort of corrupt conduct to Camp; and (2) whether, if a jury finds that the statement was understood as imputing corrupt conduct to Camp, Yeager knew that such an imputation was false. The first factual dispute must be resolved by determining the "meaning that would be ascribed to the language by a reader or listener of ordinary or average intelligence, or by a `common mind,' "Loveless v. Graddick, 295 Ala. 142, 325 So.2d 137, 142 (1975), and is not to be determined by "critical analysis of a trained legal mind," Gray v. WALA-TV, 384 So.2d 1062, 1065 (Ala. 1980).
The "common mind" concept is the conduit that carries this case through the summary judgment stage to the jury for resolution. The value of the statement as suggesting corrupt conduct must be measured by "common mind" jurors, as opposed to a trained legal mind. This is so because political statements, if they are to be effective, *Page 929 
must be designed to appeal to the general public, the citizens — the voters — in an effort to persuade them that the thrust of the statements is true or has merit, either favorable to the candidate who makes those statements or unfavorable to his opponent.
We have no hesitancy to excerpt certain language fromAnderson, language that we perceive supports our conclusion that this case should be presented to a jury:
 "Our holding that the clear and convincing standard of proof should be taken into account in ruling on summary judgment motions does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial."
Id. at 255, 106 S.Ct. at 2513 (citations omitted).
The determination of whether the summary judgment here should be denied on the issue of actual malice is whether the evidence in the record could support a jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.
Finally, we note, as an earlier Court noted:
 " 'The issue of actual malice on the part of defendants seems peculiarly inappropriate for disposition by summary judgment because it concerns "motive, intent, and subjective feelings and reactions." ' "
Loveless, 325 So.2d at 148 (quoting Goldwater v. Ginzburg,261 F. Supp. 784 (S.D.N.Y. 1966), aff'd, 414 F.2d 324 (2d Cir. 1969), cert. denied, 396 U.S. 1049, 90 S.Ct. 701,24 L.Ed.2d 695 (1970)). For reasons indicated, not the least of which is the necessity of a jury's opportunity to weigh and determine credibility and subjective intent, we find this case uniquely suited for presentation to a jury. We, therefore, determine that the factual disputes here should be presented to a jury for decision pursuant to the "clear and convincing" evidence standard mandated by the current law.
The summary judgment entered in favor of Yeager and Timbes 
Yeager is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS and STEAGALL, JJ., concur.
HOUSTON, J., concurs specially.
MADDOX, J., dissents.
[1] Broadcasting of defamatory matter by means of radio or television is libel. See Restatement (Second) of Torts § 568A (1966); see, e.g. Gray v. WALA-TV, 384 So.2d 1062, 1065 (Ala. 1980).