624 So.2d 546 (1993)
Leon F. "Buddy" KELLY, Jr.
v.
Richard ARRINGTON.
1920145.
Supreme Court of Alabama.
July 23, 1993.
*547 Stephen D. Heninger of Heninger, Burge & Vargo, Birmingham, for appellant.
Joe R. Whatley, Jr. and Samuel H. Heldman of Cooper, Mitch, Crawford, Kuykendall & Whatley, Donald V. Watkins, and Kenneth L. Thomas of Thomas, Means & Gillis, Birmingham, for appellee.
PER CURIAM.
The sole issue presented by this appeal is whether statements made by the mayor of Birmingham about an assistant United States attorney could reasonably be understood by the average layperson as defamatory; if so, then the defendant's summary judgment in this defamation action must be reversed.
The defendant, Richard Arrington, is the mayor of the City of Birmingham. The plaintiff, Leon F. "Buddy" Kelly, Jr., is an assistant United States attorney for the Northern District of Alabama. Kelly sued Arrington in the Circuit Court of Shelby County, but his case was subsequently transferred to Jefferson County.[1] Arrington subsequently moved for a summary judgment, arguing that, as a matter of law, his statements were not defamatory. The court granted the motion. Kelly appeals. We affirm.
Mayor Arrington wrote and published a column entitled "Mayor's Comments: Some Post Election Observations," on October 17, 1991, in the Birmingham Times. The article was republished in the Birmingham News/Birmingham Post-Herald on Saturday, October 19, 1991, and again in the Birmingham News on October 21, 1991. The portion of the article at issue reads as follows:
"In July 1987, [Joseph] Boohaker was included in a meeting with United States Attorney Frank Donaldson who met and tried to solicit information from some individuals which might incriminate me. Also present were Albert Lee Smith, Buddy Kelly (Donaldson's Aide) and two FBI agents. Their cooperative efforts to gain incriminating information on me didn't stop at this meeting. During the '91 campaign, Boohaker held discussions with Donaldson and Kelly about me and the campaign and spoke at least once with Assistant United States Attorney Bill Barnett via phone about me. Boohaker shared his information and strategies with the [Emory] Anthony campaign through his direct contact with an Anthony campaign aide named Ed Green. Of course, I don't claim there was anything illegal about the Boohaker-Anthony ties. But I question how ethical the feds' involvement in this matter was."
Kelly contends that these statements were defamatory because, Kelly says, in them Arrington *548 accused Kelly of being in collusion with federal agents and private individuals to illegally solicit and publish information to incriminate Arrington during his re-election campaign for mayor. Kelly argues that they relate directly to his professional and personal integrity and ethics and that "[t]he crux of this lawsuit is that defendant has jeopardized plaintiff's livelihood and career." Kelly states that "[a] United States Attorney can be disciplined or terminated for even discussing the subject of an investigation," and that "[Arrington's] charges are even more serious because [Arrington] charged [him] with leaking information to influence and interfere with a municipal election." Kelly says that Arrington's statements could be reasonably understood by the average layperson as defamatory and, therefore, that they were actionable.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for entering a summary judgment. The rule requires the trial court to determine (1) that there is no genuine issue of material fact and (2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the moving party by this rule have been stated by the Court as follows:
"`The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact.'"
Berner v. Caldwell, 543 So.2d 686, 688 (Ala. 1989) (quoting Schoen v. Gullege, 481 So.2d 1094 (Ala.1985)).
The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala.1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
We now address whether the statements could have been understood as defamatory. Whether a communication is reasonably capable of a defamatory meaning is a question of law. Camp v. Yeager, 601 So.2d 924, 926 (Ala.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 967, 122 L.Ed.2d 122 (1993); Harris v. School Annual Publishing Co., 466 So.2d 963, 964 (Ala.1985). "[I]f the communication is not reasonably capable of a defamatory meaning, there is no issue of fact, and summary judgment is proper." Harris, 466 So.2d at 964-65. "However, if the trial court finds that the statement is reasonably capable of a defamatory meaning, `it is then for the jury to say whether [the statement was] in fact so understood.'" Camp, 601 So.2d at 927, quoting W. Page Keeton, et al., Prosser and Keeton on Torts, § 111, at 781 (5th ed. 1984).
The test to factually determine the defamatory nature of a statement was described in Loveless v. Graddick, 295 Ala. 142, 148, 325 So.2d 137, 142 (1975), as follows:
"It seems to be the general rule that the test to be applied in determining the defamatory nature of an imputation is that meaning which `would be ascribed to the language by a reader or listener of ordinary or average intelligence, or by a "common mind".' 50 Am.Jur.2d Libel and Slander § 138. Thus, [a newspaper advertisement] `must be construed in the sense which readers of common and reasonable understanding would ascribe to it.' 50 Am. Jur. Libel and Slander, supra."
In addition, this Court has set out the following principle for determining whether a printed statement was defamatory:
"[T]he printed words are to be taken in their natural meaning, and according to the sense in which they appear to have been used and the idea they are adapted to convey to those who read them. A forced construction is not to be put upon them in order to relieve the defendant from liability, nor are they to be subjected to the critical analysis of a trained legal mind, but must be construed and determined by the *549 natural and probable effect on the mind of the average lay reader."
McGraw v. Thomason, 265 Ala. 635, 639, 93 So.2d 741, 744 (1957).
If the words employed in the allegedly defamatory publication are understood to impute dishonesty or corruption to an individual, they are actionable. Gray v. WALA-TV, 384 So.2d 1062, 1065 (Ala.1980). Words are defamatory per se if they directly tend to prejudice anyone in his office, profession, trade, or business, or in any lawful employment by which he may gain his livelihood. Id.
In an affidavit filed in opposition to the motion for summary judgment, Kelly said, in part:
"I hereby state absolutely and unequivocally that defendant Arrington's statement, and the implications and innuendo contained therein, are false.
"I was present in a meeting in July 1987, with Frank Donaldson, Joseph Boohaker, Albert Lee Smith and two private individuals. No FBI agents were present. I was present in my official capacity as First Assistant United States Attorney. Defendant Arrington was not the subject of discussion at said meeting and neither I nor anyone else solicited any incriminating evidence regarding defendant Arrington at said meeting. To the best of my recollection, defendant Arrington was not even mentioned, by name or title, at said meeting. I can state positively that neither Emory Anthony nor the 1991 mayoral election were discussed at said meeting.
"I have never been present at any other meeting between Frank Donaldson, Joseph Boohaker and Albert Lee Smith. To the best of my knowledge and belief, no such other meeting ever took place.
"I hereby state absolutely and unequivocally that I have never solicited anyone to provide me or anyone else with incriminating evidence regarding defendant Arrington.
"I hereby state absolutely and unequivocally that I have never shared any incriminating evidence regarding defendant Arrington with Joseph Boohaker, with Emory Anthony, or anyone acting in Mr. Anthony's behalf. To the best of my knowledge, I have never met or spoken to Mr. Anthony, and I have never discussed the mayoral election in which he participated with anyone acting in his behalf.
"I am precluded by federal law and the terms of my employment with the Department of Justice from participating in partisan politics in an attempt to influence the outcome of an election. I am precluded by the Code of Ethics of my profession, federal law and the terms of my employment from disclosing confidential matters regarding criminal investigations.
"I hereby state absolutely and unequivocally that I have not violated the Code of Ethics of my profession; any law, state or federal; or the terms of my employment, at any time with respect to defendant Arrington.
"To the best of my knowledge and belief, defendant Arrington, and his legal advisors, were repeatedly advised by the United States Attorney's Office that he was not being improperly `targeted' for investigation, and was not the victim of any personal or political scheme, plot, vendetta or conspiracy against him. Defendant Arrington, and his legal advisors, were also advised of the pertinent statutes and regulations which protected him from such illegal and unethical conduct. To the best of my knowledge and belief, said information was supplied to defendant Arrington, and his legal advisors, prior to October 19, 1991.
"In spite of such knowledge and advice, defendant made his statements about me when he knew or had reason to know they were false. He made such statements knowingly and in reckless and utter disregard of their falsity in an attempt to intimidate me, the United States Attorney's Office, and the United States Department of Justice in the performance of our professional duties, and to harm the personal reputation and professional standing of myself and Frank Donaldson.
"As a result of said statements of defendant Arrington, I have been personally and professionally damaged by having my honesty *550 and integrity publicly impugned and by having been made the subject of an investigation by the Department of Justice's Office of Professional Responsibility. Until such time as defendant Arrington's statements about me are shown to be the lies they are in a proper court of law, my ability to advance in my career of public legal service is compromised.
"To the best of my knowledge and belief, defendant made the statements about me knowingly, willfully and in reckless and utter disregard of the truth in order to further his own personal and political interests."
Kelly summarizes his argument about the defamatory nature of the statement as follows:
"Defendant Richard Arrington acting in his capacity as an individual wrote and published a defamatory article against plaintiff in the Birmingham Times on October 19, 1991. Defendant reaffirmed his statement in the Birmingham News on October 21, 1991. Defendant accused plaintiff, First Assistant U.S. Attorney, of illegally soliciting and publishing information to incriminate and interfere with defendant's political campaign. Plaintiff is an employee of the United States Department of Justice and is strictly prohibited by federal law from discussing evidence regarding investigations of the Department of Justice. Plaintiff is bound by federal law and can be terminated for attempting to influence a political election. As a result of defendant's defamatory statement, plaintiff is the subject of an investigation by the Department of Justice's Office of Professional Responsibility. Defendant's article is reasonably capable of a defamatory meaning by applying the ordinary meaning of the language used by defendant and considering defendant's statement in its entirety. Because defendant's statement is capable of a defamatory meaning as a question of law, a jury should be allowed to decide if the statement was understood to be defamatory."
Arrington summarizes his argument, in his brief, as follows:
"Affirmance is compelled by this Court's recent decision in Deutcsh v. Birmingham Post Co., 603 So.2d 910 (Ala.1992), cert. denied, ___ U.S. ___, [113 S.Ct. 976, 122 L.Ed.2d 130] 61 U.S.L.W. 3473 (1993). The Court there considered the protections, under state law and federal law, for editorial statements. The Court noted that a statement must be false before it may be actionable at all. See id. at 911 ("If the published statements are true, there is no actionable cause for libel."). The Court held that a `statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection.' Id. at 912, quoting Milkovich v. Lorain Journal Co., 497 U.S. 1, 110 S.Ct. 2695 [111 L.Ed.2d 1] (1990). The Court further held that `"Imaginative expression" and "the rhetorical hyperbole" traditionally used in public debate are protected.' Deutcsh, 603 So.2d at 912.
"The Court further held that a plaintiff is `required to present clear and convincing evidence from which a jury could conclude that the [defendant] made false and defamatory statements about him....' Id. In deciding whether the statements were defamatory, of course, the court looks to the [statements themselves]. See Clark v. America's First Credit Union, 585 So.2d 1367, 1370 (Ala.1991). Thus, as an initial inquiry, the plaintiff must show the court, clearly and convincingly, that the statements were defamatory.
"The Court further defined the strong protection for newspaper columns or editorials like the one involved in this case. The plaintiff must `show that ... the statements of public concern in the editorial contained a provably false factual connotation.' Deutcsh, 603 So.2d at 912.
"This Court's opinion in Deutcsh requires summary judgment in this case, because ... no statement of fact in Mayor Arrington's editorial was defamatory, and Mayor Arrington's expressions of opinion... did not contain any provably false factual connotation."
We are persuaded that the statements made by Mayor Arrington could not reasonably *551 be understood by the average layperson as having a defamatory meaning; therefore, no material issue of fact was presented. Consequently, the summary judgment was appropriate.
Based on the foregoing, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
MADDOX, J., concurs in the result.
MADDOX, Justice (concurring in the result).
Although I concur in the affirmance of the summary judgment, it is not because "the statements ... could not reasonably be understood by the average layperson as having a defamatory meaning," but because of the holding in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), a case decided "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks upon government and public officials." 376 U.S. at 270, 84 S.Ct. at 721. See Camp v. Yeager, 601 So.2d 924 (Ala.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 967, 122 L.Ed.2d 122 (1993), a case in which the alleged defamatory statement was made about a public official during a political campaign and may have been understood as accusing the official of misconduct in office while he was a member of the Public Service Commission. In a dissenting opinion in that case, I said that "[c]onsidering the Supreme Court's review in New York Times of the history of the First Amendment, it is clear to me that the Court came ever so close to holding that political speech, even speech that is false and defamatory ... has absolute protection under the First Amendment" (emphasis original), 601 So.2d at 931, and I included the following quote from New York Times:
"In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification of men who have been, or are, prominent in church or state, and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy."
601 So.2d at 901 (quoting 376 U.S. 254, 271, 84 S.Ct. 710, 721, quoting from Cantwell v. Connecticut, 310 U.S. 296, 310, 60 S.Ct. 900, 906, 84 L.Ed. 1213 (1940) (emphasis added in my dissent in Camp)).[2]
That the newspaper article here in dispute was capable of a defamatory meaning seems clear. In the article, Arrington accused Kelly, an assistant United States attorney, of being in collusion with federal agents and private individuals to illegally solicit and publish information to incriminate the mayor, and also, within the same article, the mayor accused Kelly of ongoing efforts to influence and maliciously interfere with his mayoral campaign. In his concluding comments, the mayor accused Kelly of "unethical" conduct; if that statement was true, Kelly could have been disciplined or his employment terminated, under federal law.
The statements in this article, therefore, are not substantially different from the statement made by the defendant in Camp v. Yeager, in which a majority of this Court, applying the test of Loveless v. Graddick, 295 Ala. 142, 325 So.2d 137 (1975), reversed a summary judgment for the defendant. I think that the Court is being inconsistent, but I concur in the result.
NOTES
[1] Arrington asked the Shelby Circuit Court to dismiss for lack of venue or, in the alternative, to transfer the action. His motion was denied, but on Arrington's petition, this Court issued a writ of mandamus requiring the transfer to Jefferson County. Ex parte Arrington, 599 So.2d 24 (Ala. 1992).
[2] For a full understanding of my views on First Amendment protections, see my dissent in Camp v. Yeager, 601 So.2d 924, 926 (Ala.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 967, 122 L.Ed.2d 122 (1993).