IN THE UNITED STATES DISTRICT COURT FOR 
 THE MIDDLE DISTRICT OF ALABAMA 
 NORTHERN DIVISION 

BYRON BUTLER, ) 
 ) 
 Plaintiff, ) 
 ) 
v. ) Case No. 2:19-cv-530-ALB 
 ) 
DAMON DUNN, and ) 
LAGUNITA FRANCHISE ) 
OPERATIONS, LLC, ) 
 ) 
 Defendants. ) 
 MEMORANDUM OPINION AND ORDER 
This matter comes before the court on Defendants Damon Dunn and Lagunita 
Franchise Operations, LLC’s Renewed Motion to Dismiss. (Doc. 15). Upon 
consideration, the motion is GRANTED. 
 BACKGROUND 
There are people who love their coffee. And then there are people like Plaintiff 
Byron Butler. His drink of choice? Hot coffee in his Dunkin’ Donuts Refill Cup, 
with seven creams, seven sugars, seven pumps of French vanilla swirl, and a single 
pump of caramel swirl. (Doc. 14 ¶10). But Butler’s sugary morning ritual ended 
when the Vaughn Road Dunkin’ Donuts began charging Butler and his wife $0.25 
for each extra pump of swirl. (Doc. 14 ¶12). 
Butler is an African-American man and an investigator at the Alabama Ethics 
Commission. When he found out about the extra charges, Butler complained. Damon 

Dunn, the out-of-state manager of the Dunkin’ Donuts store in question, later told 
the Montgomery Advertiser that Butler (1) complained that the extra charges were 
based on his race and (2) misused his position as an investigator to intimidate 

Dunkin’ Donut’s employees about the extra charges. The Montgomery Advertiser 
reported Dunn’s side of the story as follows: 
 When Damon Dunn received notification of a discrimination 
complaint against his Dunkin’ Donuts store on Vaughn Road, he was 
concerned at first, then confused and then angry. 
 It’s corporate policy that customer complaints are reviewed and 
handled in a timely manner, but the majority of those are disgruntled 
customers upset about a long wait time or food prepared incorrectly. 
 “When I saw we had a discrimination complaint, I knew I wanted to 
personally review this and handle it myself,” he said. 
 Byron Butler, a man Dunn would learn is an investigator with the 
Alabama Ethics Commission, accused the store in May of charging 
black customers more for extra pumps of coffee flavoring known as 
“swirl” at the restaurant. A claim that Dunn says is unfounded. 
 Upset at what Butler perceived as a slight against his race, he then 
told an employee he was an investigator and took a verbal statement 
from her about the charging practices at the store. The employee, who 
is 18, thought she’d face legal trouble if she didn’t talk with him. 
 Dunn considers that an abuse of Butler’s power as a public employee 
and unethical especially for a man who works with the state’s 
investigating authority on ethical violations. 
 “Our public officials have our trust to be fair and honest. They must 
be held accountable if they abuse their authority to leverage favorable 
deals from local small business owners if we do not consent to their 
demands,” Dunn said. “Somebody has to hold public officials 
accountable.” 
 75 cents for swirl 
 The initial complaint was unclear as a process server emailed a 
notice to Lagunita Franchise Operations, LLC, the company that owns 
the Vaughn Road doughnut shop, about the alleged discrimination. 
 Unsure what the issue was, Dunn reached Butler by phone, during 
which the investigator allegedly told the owner that he’d been charged 
more for the flavoring than white customers. 
 “I simply told him that’s not so,” Dunn said. “First, I’m black. Why 
would I tell my employees to discriminate against people who are of 
the same race as me? Second, the cashiers just push a button on a screen 
and it charges what it charges. There’s no button for black customers 
and white customers.” 
 Repeated efforts to reach Butler at the number Dunn called and at 
his office at the commission were unsuccessful. 

Kirsten Fiscus, Dunkin’ Donuts Owner Accuses Ethics Commission Investigator of 
Abuse of Power, MONTGOMERY ADVERTISER (May 31, 2019), 
https://www.montgomeryadvertiser.com/story/news/2019/05/31/dunkin-donuts- 
store-owner-alleges-abuse-power-alabama-ethics-investigator/1284376001/.1 
Butler says the article is wrong. He alleges in this lawsuit that he wrote Dunn 
a letter expressing his concerns about the extra charges. But he alleges that the letter 
did not reference his job with the State or suggest that race had a role in the price 
                                                             
1 The Court may take judicial notice of facts “not subject to reasonable dispute” because they are 
“either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of 
accurate and ready determination by resort to sources whose accuracy cannot reasonably be 
questioned.” Fed. R. Evid. 201(b); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 
F.3d 954, 960 (9th Cir. 2010) (quoting Premier Growth Fund v. Alliance Capital Mgmt., 435 F.3d 
396, 401 n.15 (3d Cir. 2006) (“Courts may take judicial notice of publications introduced to 
‘indicate what was in the public realm at the time, not whether the contents of those articles were 
in fact true.’”); see Shahar v. Bowers, 120 F.3d 211, 214 n.5 (11th Cir. 1997) (denying judicial 
notice request to accept a fact, rather than to just note media had reported fact). Because the 
Montgomery Advertiser article is the basis for this suit, the Court will take judicial notice of what 
was reported, but it will not assume that anything in the article is true. 
increase. (Doc. 14 ¶¶16–19). He also alleges that he did not intimidate store 
employees or misuse his position as an investigator. 

Dunn filed a complaint against Butler with his employer, the Alabama Ethics 
Commission, in which he made these charges. (Doc. 14 ¶¶42–44). He gave a copy 
of his complaint to the Montgomery Advertiser, and one of their reporters wrote the 

story quoted above. (Doc. 14 ¶¶48–49). In response to the Montgomery Advertiser 
article, several anonymous online commenters decided to let the Internet know what 
they thought of Butler, and they were not kind: 
(a) Eric Johnson 
I believe Mr Investigator Butler needs to be disciplined for 
impersonating a real officer of the law. While he may be sworn as an 
investigator of the Ethics Commission, I don’t believe the Ethics 
Commission has any role whatsoever in his issue. After all, the Ethics 
Commssion (sic) doesn’t investigate major ethical crimes, why should 
they investigate extra costs for excessive cream in the coffee? Sounds 
to me as though Mr. Butler has gotten a bit too big for his britches. 

(b) Sardondi 
Huh. It’s almost like a clumsy failed shakedown. And this “interview” 
of the female employee who was asked to give personal information...I 
smell a rat. And it’s not at Dunkin’ D. 

(c) Bartholamew 
Reply to @rockfordpi: it sounds like he was using his position as a law 
enforcement officer/investigator to intimidate the DD employees so 
that he would be charged less for creamer. He must have shown a badge 
to get the employee to give a statement, but did not say what agency he 
worked for. 

(d) 6of1 
Typical government employee - think they are above ANY law and that 
they can treat the people who pay their salaries and unreal benefits as if 
they were dirt under their feet. 

Fire this guy! 

(e) Sardondi 
Reply to @UAUKUA: Because he badged her, trying to get a date. 
And, no, the Ethics Commission has absolutely no authority in this 
situation. As the investigator Butler well knew, but nonetheless 
attempted to brazen out. 

3-to-1 the next step was “the hook”, in which the investigator offered 
to “make it all go away”. For a consideration. 

This is a grotesque abuse of authority, which almost certainly had a 
corrupt motive behind it. Firing is the only proper response. 

(f) Reply to @Goatman: No, this is what Investigator Butler wants store 
owner Dunn to THINK the Ethcis (sic) Commission investigates. Now, 
our job is to ask the question, “Why would Butler possibly want to 
threaten a business owner with ‘making trouble’ for him?” 

And we will be excused if the first answer to pop into our heads is, 
“Because at some point Butler was going to to (sic) make an 
extortionate demand for money, goods or services. And try to get a date 
with the female employee he bullied into giving him personal 
information.” 

(Doc. 14 ¶37). Butler alleges these comments caused him “embarrassment, loss of 
standing in the community, mental anguish, emotional distress[,] and other pain and 
suffering.” (Doc. 14 ¶39). In particular, he alleges that his reputation as an 
investigator for the Alabama Ethics Commission and as the pastor of a local church 
has suffered. (Doc. 14 ¶34). 
Butler filed this lawsuit against Damon Dunn and the corporate franchisee of 
the Dunkin Donuts store, Lagunita Franchise Operations, LLC. There are four counts 

in the operative Amended Complaint. Count One is for slander against Dunn for 
statements he allegedly made to the Montgomery Advertiser. Count Two is slander 
against Dunn for statements he allegedly made to the Alabama Ethics Commission. 

Count Three is libel against Dunn based on his written complaint to the Alabama 
Ethics Commission. Count Four is for conspiracy between Dunn and Lagunita to 
slander and libel Butler. 
 STANDARD 

When evaluating a motion to dismiss, the court assumes the factual allegations 
are true and construes them in the light most favorable to the plaintiff. Hishon v. 
King & Spalding, 467 U.S. 69, 73 (1984); Duke v. Cleland, 5 F.3d 1399, 1402 (11th 

Cir. 1993). “To avoid dismissal the complaint must contain sufficient factual matter 
… to state a claim to relief that is plausible on its face.” Gates v. Khokhar, 884 F.3d 
1290, 1296 (11th Cir. 2018) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) 
(internal quotation marks omitted). Whether a complaint is plausible depends on 

whether “it contains sufficient facts to support a reasonable inference that the 
defendant is liable for the misconduct alleged.” Id. 
 DISCUSSION 
Dunn argues the Amended Complaint should be dismissed for several reasons. 

First, Dunn argues that his allegedly false statements are not actionable as 
defamatory per se and that Butler has not alleged the special damages necessary to 
maintain an action for defamation per quod. Second, and in the alternative, because 

everyone agrees Butler is a public officer or official, he can bring a slander or libel 
action only if the false statements were made with actual malice. Dunn argues that 
Butler has not alleged sufficient facts to meet that standard. Finally, as to the 
conspiracy count, Dunn argues that a corporation cannot engage in an actional 

conspiracy with its employees or officers, an argument to which Butler does not 
respond. 
As explained in more detail below, the Court agrees with Dunn and concludes 

that the Amended Complaint is due to be dismissed in its entirety. Counts One and 
Two in the Amended Complaint are due to be dismissed because these counts do not 
sufficiently plead actionable claims for slander under Alabama law. Count Three 
pleads an actionable claim for libel under Alabama law, but the Amended Complaint 

does not sufficiently allege malice, which is necessary because Butler is a public 
officer or official. Count Four is due to be dismissed because the underlying 
substantive counts are properly dismissed, and because a corporation cannot 

conspire with its own officers and employees. 
A. Butler Sufficiently Pleads Libel (Count 3) But Not Slander (Counts 1 
 and 2). 

To prevail on any claim for defamation—whether slander or libel—a plaintiff 
must show the defendant made a false and defamatory statement about the plaintiff 
to a third person. Anderton v. Gentry, 577 So. 2d 1261, 1263 (Ala. 1991). Butler’s 
Amended Complaint identifies two basic statements that he claims are false and 
defamatory: (1) that Butler complained that the extra charges were due to his race 
and (2) that Butler misused his position as an investigator in questioning these extra 

charges. He alleges that Dunn made these statements both orally (slander) and in 
writing (libel). 
Some false statements are actionable without proving special damages 

(actionable per se), and others require pleading and proving special damages 
(actionable per quod). Id. Special damages must be the “intended result or natural 
consequence” of the defamatory statement and are generally “limited to ‘material 
loss capable of being measured in money.’” Butler, 871 So. 2d at 18 (quoting Shook 

v. St. Bede Sch., 74 F. Supp. 2d 1172, 1180 (M.D. Ala. 1999). 
Butler has failed to plead special damages. The sole damages Butler has 
pleaded are damages to his reputation, as shown by the mean comments responding 

to the Montgomery Advertiser article. The Montgomery Advertiser’s comment page 
encourages “views that foster understanding, insight and civil discourse.”2 But a 
more accurate header would be Dante’s warning: “Abandon every hope, all you who 

enter.” Dante Alighieri, The Portable Dante 14 (trans. Mark Musa 2003). 
Nonetheless, although these Internet comments about Butler were mean-spirited, 
they do not reflect a measurable, material loss—such as loss of employment or the 

like. 
Because there are no special damages in the Amended Complaint, Butler’s 
slander claims (Counts 1 and 2) rise and fall on whether Dunn’s allegedly false 
statements are slander per se. Slander per se requires the plaintiff to show that the 

spoken communication involved accusations of infamy or moral turpitude. Butler, 
871 So. 2d at 17. Infamy is “[a] qualification of a man’s legal status produced by his 
conviction of an infamous crime and the consequent loss of honor and credit….” 

Cottrell v. NCAA, 975 So. 2d 306, 345–46 (quoting Brown v. W.R.M.A. Broad. Co., 
238 So. 2d 540, 541–42 (Ala. 1970)). Moral turpitude is “an inherent quality of 
baseness, vileness, depravity.” Id. 
Neither of Dunn’s false statements about Butler rise to this level. It is 

obviously not base or vile for a person to complain about racial discrimination, and 
Dunn’s statement that Butler made that kind of complaint does not rise to the level 

                                                             
2 See USA Today Network Conversation Guidelines, Montgomery Advertiser (Oct. 10, 2019) 
(internal quotations omitted), https://static.montgomeryadvertiser.com/conversation-guidelines/. 
of slander per se. On the other hand, Dunn’s allegedly false statements about Butler 
misusing his position as a law enforcement officer are a closer question. Because it 

is inappropriate for a law enforcement officer to threaten to “make problems for [a] 
business” or use his position to intimidate a coffee shop’s employees, false 
allegations like these could cause someone like Butler a great deal of reputational 

damage. But the standard for slander per se is incredibly high. Basically, Alabama 
law requires a false accusation that someone has committed a particularly heinous 
felony. And the allegedly false allegations here, although disturbing, do not meet 
that standard. Both counts of slander are due to be dismissed. 

The third count of Butler’s complaint alleges libel. Slander is about the spoken 
word, and libel is about the written word. Because libel is more permanent, the 
standard for libel per se under Alabama law is lower than the standard for slander 

per se.3 It requires a written communication that “directly tend[s] to prejudice 
anyone in his office, profession, trade, or business, or in any lawful employment by 
which he may gain his livelihood.” Kelly v. Arrington, 624 So. 2d 546, 549 (Ala. 
1993). A written communication does not have to involve widespread publication. 

                                                             
3 There has apparently been a “vigorous[]” and “sharp” debate about whether libel per quod is a 
proper cause of action. Restatement (2d) of Torts § 575 Reporter’s Note 3 (1965). The majority 
common law rule is that “all libel is actionable per se—without proof of special harm.” Id. §569 
Reporter’s Note 1. Of course, a majority rule means a minority of states recognize libel per quod, 
but Alabama has neither recognized it nor condemned it. Id. Reporter’s Note 8 (citing Barry 
College v. Hull, 353 So. 2d 575 (Fla. App. 1977); Stearns v. McManis, 543 S.W.2d 659 (Tex. Civ. 
App. 1976)). Regardless, Butler’s libel claim fails on separate grounds by not sufficiently pleading 
actual malice, so this vigorous and sharp debate will have to wait for another day. 
It may involve a single letter transferred to a third person, such as Dunn’s transfer 
of his written complaint to the newspaper. Penry v. Dozier, 49 So. 909 (Ala. 1909) 

(“There must be a communication to some person other than the plaintiff and 
defendant. It is not necessary that it be made known to the public generally.”). The 
Court reads the allegedly defamatory statements as “a reader or listener of ‘average 

or ordinary intelligence….’” Camp v. Yeager, 601 So. 2d 924, 927 (Ala. 1992) 
(quoting Loveless v. Graddick, 325 So. 2d 137, 142 (Ala. 1975). 
Butler sufficiently pleads libel. A false accusation that a law enforcement 
officer used his badge to intimidate employees over coffee flavoring tends to 

prejudice that officer’s profession and employment. See Kelly, 624 So. 2d at 549. 
Butler pleads that this false accusation was communicated in writing to the 
Montgomery Advertiser when Dunn sent the Advertiser a copy of the complaint that 

he had filed with the Ethics Commission. Although Dunn argues that his written 
statements are privileged because they were originally made to the Alabama Ethics 
Commissions, such quasi-judicial privileges are waived when privileged 
communications are published “outside the circle of those who must have 

knowledge of them pursuant to the decision-making process.” Webster v. Byrd, 494 
So. 2d 31, 35 (Ala. 1986). 
B. Butler Does Not Sufficiently Plead Actual Malice, which Is Necessary 
 for His Slander and Libel Claims. 

As noted above, Butler has pleaded that Dunn communicated a false, libelous 
statement to the Montgomery Advertiser. But, because Butler concedes that he is a 
public officer or official, his claims for libel and slander also require him to allege 
that Dunn made this false statement with actual malice. See New York Times Co. v. 
Sullivan, 376 U.S. 254 (1964); Mead Corp. v. Hicks, 448 So. 2d 308, 310 (Ala. 
1984). Actual malice is knowledge of a statement’s falsity or with reckless disregard 

of its falsity. Fulton v. Advertiser Co., 388 So. 2d 533, 539 (Ala. 1980) (per curiam) 
(overruled on other grounds). 
Butler’s pleading falls short of this standard. Butler has not alleged how 

Dunn’s statements were published with knowledge of their falsity. Instead, he offers 
only conclusory allegations, which are insufficient to plead actual malice. See also 
Schatz v. Republican State Leadership Comm., 669 F.3d 50, 56 (1st Cir. 2012) 
(finding that a plaintiff’s complaint using “actual-malice buzzwords” was not 

sufficient); Mayfield v. Nat’l Ass’n for Stock Car Auto Racing, Inc., 674 F.3d 369, 
377–78 (4th Cir. 2012) (conclusory allegations of actual malice were insufficient). 
The First Amendment protects our right to criticize public officials and government 

officers, even when that criticism is harsh and unfair. Here, Dunn accurately 
identified Butler as a government investigator and criticized him for his response to 
the extra charges because of his government position. Assuming Dunn made some 
inaccurate statements about Butler’s interactions with coffee-shop employees, those 
statements “represent[] the sort of inaccuracy that is commonplace in the forum of 

robust debate to which the [actual malice] rule applies.” Bose Corp. v. Consumers 
Union of U.S., Inc., 466 U.S. 485, 513 (1984). Accordingly, the Amended 
Complaint’s failure to allege actual malice means that the libel claim in Count 3 

should be dismissed and is another reason that the slander claims in Counts 1 and 2 
should be dismissed. 
C. The Conspiracy Claim in Count Four is Due to Be Dismissed. 
Count 4 alleges a civil conspiracy claim. A conspiracy exists only where there 

is “(1) concerted action by two or more persons (2) to achieve an unlawful purpose 
or a lawful purpose by unlawful means.” Ex parte Alamo Title Co., 128 So. 3d 700, 
713 (Ala. 2013). 

Butler’s conspiracy claim must be dismissed for two reasons. First, there must 
be some underlying wrongful act to sustain a conspiracy claim under Alabama law. 
The Alabama Supreme Court has explained that “[w]here civil liability for a 
conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of 

action. The gist of the action is not the conspiracy alleged but the wrong committed.” 
O’Dell v. State ex rel. Patterson, 117 So.2d 164, 168 (Ala. 1959). There is no 
underlying wrong here because, as explained above, Butler’s slander and libel claims 

fail. Second, under the intracorporate-conspiracy doctrine, a corporation and its 
employees or agents cannot form a civil conspiracy. See M&F Bank v. First Am. 
Title Ins. Co., 144 So. 3d 222, 234 (Ala. 2013); Grider v. City of Auburn, 618 F.3d 

1240, 1261 (11th Cir. 2010). The acts of Lagunita’s employees and agents are all 
attributed to Lagunita. So even if wrongdoing had occurred, there would be no 
multiplicity of actors necessary for a conspiracy. 

 CONCLUSION 
The Court respectfully suggests that the parties think twice about whether they 
want to continue fighting with each other—in court, in the press, or in the Ethics 
Commission. Life is too short. Or, as Johnathan Swift has written, “[t]he best 

maxim I know in this life is, to drink your coffee when you can; and when you 
cannot, to be easy without it ….” Letter from Jonathan Swift to Vanessa (July 13, 
1722), in 2 Letters, Written By the Late Jonathan Swift, 297 (John Hawkesworth, ed. 

1766). In any event, the motion to dismiss is GRANTED. Because Butler has 
already amended the complaint once in response to Dunn’s original motion to 
dismiss, there is no reason to grant further leave to amend. The Amended Complaint 
is DISMISSED WITH PREJUDICE. 

DONE and ORDERED this 20th day of December 2019. 

 /s/ Andrew L. Brasher 
 ANDREW L. BRASHER 
 UNITED STATES DISTRICT JUDGE