MAIN, Justice.
Jerry Nix appeals from a. summary judgment entered by the Franklin Circuit Court finding that he is an adult in need of protective services under the Adult Protective Services Act of 1976, §§ 38-9-1 to -11, Ala. Code 1975 (“the Act”). We reverse and remand.
I. Facts and Procedural History
, On December ■ 7, 2015, the Franklin County Department of Human Resources (“DHR”) filed a petition in the Franklin Circuit Court pursuant to § 38-9-5, Ala. Code 1975, and § 38-9-6, Ala. Code 1975, seeking emergency protective placement for Nix. DHR alleged that Nix, then 78 years old, whs an “adult in need of protective services” as that term is defined by the Act. The petition claimed that Nix had not been taking his medications for diabetes and hypertension and that he had been the victim of a postal scam costing him thousands of dollars. DHR further alleged that Nix urgently required nursing-home care to protect his health and safety and that, otherwise, Nix was in immediate danger. DHR requested emergency-protective placement for Nix and that' the court set a hearing pursuant to § 38-9-6 to determine Nix’s need for protective services.
On the same day the petition for emergency placement was filed, the trial court entered an order declaring that Nix was indigent, that he was in need of protective services, and that he needed a conservator and a guardian to administer his estate and to see to his medical needs. The trial court ordered DHR to provide protective services for Nix, appointed a guardian ad litem to represent Nix in the proceedings, and appointed Nix’s son, Darren Nix, as conservator of Nix’s estate and guardian of his person. The trial court set a hearing on the matter for December 21, 2015. Nix was removed from his -home and was placed in the Shoals Hospital Senior Care Center in Muscle Shoals.
. On Déeember 14, 2015, Nix, represented by his guardian ad litem, filed an answer to DHR’s petition, denying all material allegations. The trial court set the matter for a jury trial on February 29, 2016.
On January 12, 2016, DHR filed a motion to replace Darren Nix as Nix’s guardian and conservator with the Franklin County, sheriff. DHR informed the court that Darren Nix no longer wished to serve as his father’s guardian or conservator. DHR also requested that the new; guardian/conservator be allowed to sell Nix’s house to pay for his care and that Nix be transported from Shoals Hospital Senior Care Center to an assisted-living facility. Nix, through his guardian ad litem, responded that he had no objection to the removal of his son as guardian and conservator and the appointment of the Franklin County sheriff as his guardian and conservator, but he objected to the sale of his house or any of his assets “before there has been an adjudication by a jury that [Nix] is an adult in need of protective services.” On January 13, 2016, the trial court removed Darren Nix as guardian and conservator and replaced him with the Franklin County sheriff. The trial court also entered an order authorizing the newly appointed guardian and conservator to sell Nix’s house at or above fair-market value.
For reasons unclear from the record, the case did not proceed to trial as scheduled on February 29. On May 18, 2016, Nix, through his guardian ad litem, filed a motion for - an independent mental evaluation. Nix contended that the doctors who had previously evaluated him were employed or retained’ by DHR and therefore *452 were not independent. He -also requested that he be permitted an independent medical exam by a doctor specializing in geriatrics. Nix alleged that he was financially able to pay for the mental evaluation. Nix further requested that the case be set for a final hearing. On May 23, 2016, the trial court entered an order denying Nix’s request "for, an independent mental 'evaluation.
On June 17, 2016, DHR filed a “Petition for the Sale of Real Estate,” seeking to be allowed to sell Nix’s house. DHR asserted that it had found a buyer for the house and attached a sales contract showing a $70,000 purchase price. DHR contended that the funds from the sale of the house would be used to pay for Nix’s stay at the assisted-living facility. The trial court granted DHR’s petition on June 20, 2016. On June 22, 2016; Nix, through his guardian ad litem, filed an objection to the sale of-his house'and a motion to set the case for trial. Nix argued:
“1. The defendant, Jerry Nix, has been held in the custody of the Franklin County Department of Human Resources since December 7, 2016, ■ without a trial in this matter.
“2. The defendant is opposed to his home being sold, and in the event he is determined 'not to be an adult in need of protective services, he • would need to be able to return to his home.
“3.' Under Code of Alabama Section 38-9-6' the defendant is entitled to a hearing not more than’ thirty days from the filing of the petition, and a jury of six persons shall be empaneled for said hearing to serve as a ■ trier of facts.
“4. Under Code of Alabama Section 38-9-6(c), the Court shall give preference in making a determination to the least, drastic alternative considered to be proper under the circumstances, including a preference for noninstitutional care whenever possible.
“5. Defendant maintains that non-institutional care such [as] return to his home with home health services would be proper in this case, Defendant would further consent to a ■conservator being appointed to assist the managément of his- affairs upon his returning to his home.”
In response to Nix’s objection, the trial court entered the following order:
“The Court has been made aware that [DHR] is filing a motion for summary judgment. This motion will have to be ruled on before a final sale of the home can be made. If the Motion is denied then the Court will address the sale of the home.”
On June 27, 2016, DHR filed a motion for a summary judgment. DHR requested that the trial court “enter a final order determining that Jerry Nix is an adult in need of protective services and ... allowing for the sale of Jerry Nix’s home.” DHR contended that the undisputed facts establish that Nix is an adult in need of protective services under § 38-9-6. In support of its motion, DHR attached a number of exhibits, including the report of a United States postal inspector stating that Nix had been the victim of an illegal mail-lottery-prize scam. According to the postal inspector, Nix had fallen victim to a scam in which he mailed sums of money to out-of-state addresses known to be associated with foreign-lottery scams to claim promised — but nonexistent — lottery prizes. The postal inspector stated that some of Nix’s mail had been seized by the Únited States Postal Service and that “Examination of the .contents of the letters revealed Mr. Nix sent cash, checks, money orders, and credit card information for the purpose of claiming prizes.” The postal inspec *453 tor said it had been explained to Nix that the prize schemes were fraudulent and illegal and that Nix promised not to participate further. Nevertheless, Nix continued to send money to addresses associated with the illegal scheme.
DHR also attached letters and medical records from three of Nix’s physicians who had treated Nix both before and since he was removed from his home.[1] Each doctor wrote that Nix was suffering from-dementia. Dr. Leonides Santos, Nix’s longtime physician, stated that Nix suffers from “major neurocognitive disorder” and recommended that he be admitted to a long-term-care assisted-living facility to protect him from harm and manipulation. Dr. Timothy L. Carpenter, the attending psychiatrist at Shoals Hospital Senior Care Center, wrote that Nix suffers from “Major Neurocognitive Disorder, Alzheimer’s Type.” Dr. • Carpenter stated that- he believes Nix is at high risk of being harmed or of harming others and recommended in his January 6, 2016, letter that Nix be provided a court-appointed guardian. Dr. Loren McCoy wrote that he evaluated Nix on January 26, 2016. Dr. McCoy wrote that he had concluded -that Nix was not competent to make decisions for himself regarding his finances or medical care and that Nix needed to be in an assisted-living facility.
In its summary-judgment motion, DHR also argued that the sale of Nix’s house was necessary because Nix’s assets were “depleted to the point that he no longer can afford to pay to reside at [the assisted-living] facility without selling his home.”[2]
On June 27, the same day DHR filed the motion for a summary judgment, the trial court entered an order granting the motion and authorizing the sale of Nix’s house to proceed. 0n June 29, 2016, Nix moved to set aside the summary judgment, arguing that the entry of the court’s order granting. DHR’s summary-judgment motion on the date the motion was -filed violated the- time and notice requirements of Rule 56(c)(2), Ala. R. Civ. P. The trial court set aside its summary judgment and set a hearing on the summary-judgment motion for July 8, 2016. ■
On July 7, 2016, Nix, through his guardian ad item, filed a response in opposition to DHR’s summary-judgment motion. Nix argued that under the Act he was entitled to a jury trial to determine whether he was an adult in need of protective services. He also argued that, even if he was in need of protective services, .there was no evidence. indicating that institutionalization was the least drastic .alternative available. Nix submitted his own affidavit in opposition to summary judgment. In that affidavit, Nix testified: :
“My name is Jerry Nix and I am over •the age of 19 years and have-full knowledge of the matters .and .-facts alleged herein.
“I am currently residing at the Brent-,wood Assisted Living facility against my will. Since December 7, 2015, I have been in the custody of the Franklin County Department of- Human Resources, who placed me at Shoals Senior Care/Shoals Hospital. I am not an adult in need of protective services. I disagree with any medical opinion that says I cannot adequately live at my home alone and take care of myself. My home is located at 247 Woodmont Drive, Russell-ville, Alabama. While I have some minor *454 medical issues, I can live at home with the assistance of home health services, and make adequate decisions regarding my care. While I also believe that I have the ability to manage my assets, I am not opposed to a conservator, if the Court would allow me to return to my home. Although I am well aware of the allegations that I have lost a lot of money due to scams, I do not deny that I have lost a significant amount of money but it is my money and it would be no different than if I went to Las Vegas or Tunica and lost all the money gambling. I simply made some poor financial decisions but those decisions were not based upon me being mentally incompetent.
“I am a veteran and fought for my country and feel like my rights are being taken away from me because the Franklin County Department of Human Resources believes I cannot take care of myself the way they see fit. I own my own home, I have an adequate monthly income, and just want to be left alone to live my life the way I see fit.
“I would like a hearing in front of a jury of my peers to plead my case to them.”
DHR moved to strike Nix’s affidavit on the ground that Nix was not mentally competent to testify on his own behalf. The trial court did not rule on the motion to strike.
At the summary-judgment hearing, Nix was present, and the trial court permitted him to testify on his own behalf. Although he had trouble remembering the names of the medications he was taking and seemed confused about the different doctors he had seen, Nix’s testimony was, for the most part, lucid and responsive, as the following transcribed portion indicates:
“Q: Tell the Court your full name, Jerry.
“A: Jerry Clayton Nix.
“Q: Okay. And what’s your date of birth?
“A: August 28,1937.
[[Image here]]
“Q: And do you know where you’re living at?
“A: Yes.
“Q: Tell us where you’re living.
“A: You talking about the home that I’m in now?
“Q: No. No. Your house. Where is your house at?
“A: It’s at 247 Woodmont Drive in Rus-sellville.
“Q: And then, of course, you haven’t been there for a while. Do you know when you were removed from your home?
“A: Seven months ago. It was December 5.
[[Image here]]
“Q: And where are you currently at?
“A: I’m at the retirement home in, it’s Muscle Shoals. I don’t know the exact address, but it’s in Brent-wood.
“Q: And do you have any kind of income? Do you draw a Social Security check?
“A: Yes.
“Q: Do you know what you’re drawing?
“A: I think it’s [$]1901,1 think it is.
“Q: Okay. And, of course, Jerry, you understand that — or do you understand that DHR has alleged that you don’t have the ability to take care of yourself any longer? That you are what they call an adult in need of protective services? Are you aware of that information?
“A: Yes.
[[Image here]]
“Q: Okay. And again, today, for the record, do you disagree with DHR that you are an adult in need of protective services?
*455 “A: No, I do not need protective services. I’m fully capable of doing anything that any normal person can on a given day. Because I’m a trained cook so I can cook. I was in the military, I’ve been in all kinds of situations and still capable today of taking care of myself and providing for myself.”
Nix also admitted that he had lost a significant amount of weight before he was placed in the assisted-living facility. He explained that around the time of his weight loss he had just lost his wife of 16 years, had recently moved to Russellville from Atlanta, and, given these circumstances, simply had not been cooking as he normally would.
Nix also agreed that he had lost some money but did not admit to being scammed. He testified: “Well, I was completely aware of what I was doing. I didn’t think that I was going to win, you know, probably, but I knew that I had an option to possibly winning, and it wasn’t a large amount of money.”
Nix further testified that he would be willing to undergo further evaluation by an independent doctor; that he would consent to someone helping him with his money; and that he was open to home-health services. On cross-examination, Nix admitted that he had no medical records to dispute the opinions of Dr. Santos, Dr. Carpenter, and Dr. McCoy.
On July 15, 2016, the trial court entered a summary judgment for DHR “based on the medical records submitted with the motion.” Further, the trial court lifted the stay it had imposed on the sale of Nix’s house.[3] Nix appealed.[4]
II. Analysis
On appeal, Nix argues that the trial court erred in granting DHR’s motion for a summary judgment. He contends that questions of fact exist as to whether he was an adult in need of protective services and, if so, whether a less drastic protective placement was available and would be more appropriate.
*456 Our standard of review from a summary judgment is well settled:
“We review a- summary judgment de novo. Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala. 2002)(citing American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala. 2002)).
‘““We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine, issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact.' ‘Substantial evidence’ is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ In reviewing a summary judgment, we view the evidence in a’light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have-been free to draw.” ’
“844 So.2d at 545 (quoting Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala. 2000))(citations omitted).
“Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P.”
Hooper v. Columbus Reg'l Healthcare Sys., Inc., 956 So.2d 1135, 1139 (Ala. 2006). At the summary-judgment stage, it is not thé trial court’s function “.‘to weigh" the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.’ ” Camp v. Yeager, 601 So.2d 924, 927 (Ala. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Furthermore, “ ‘ “a court may not determine the credibility of witnesses on a motion for summary judgment.” ’ ” Wilson v. Teng, 786 So.2d 485, 498 (Ala. 2000) (quoting Ex parte Usrey, 777 So.2d 66, 68 (Ala. 2000), quoting in turn Phillips v. Wayne’s Pest Control Co., 623 So.2d 1099, 1102 (Ala. 1993)).
In the present case, DHR petitioned the trial court to order protective placement for Nix. Section 38-9-6.governs the procedure for a judicial determination ordering protective placement of or protective ser-, vices for an adult. That section provides, in part:
“(a) An interested person may petition the court to order protective placement or other protective services for an adult in need of protective services. No protective placement or other protective services may be ordered unless there is a determination by the court that the person is unable to provide for his or her own protection from abuse, neglect, exploitation, sexual abuse, or emotional abuse. Upon a petition, setting forth the facts and name, age, sex, and residence of the person, the court -of the circuit in which the person resides shall appoint a day, not more than 30 days from the filing of the petition, for a hearing on the petition. If, on the hearing of a petition, the person is not represented by counsel, the court shall appoint a guardian ad litem to represent him or her. A jury of six persons shall be impaneled for the hearing 'to serve as the trier of facts.”
A condition precedent to ordering, protective placement is a determination that the person as to whom protective placement is being sought is an “adult in need of protective services.” The Act defines that term as follows:
“A person 18 years of age or older whose behavior indicates that he or she is mentally incapable .of adequately car *457 ing for himself or herself and his or her interests without serious consequences to himself or herself or others, or who, because of physical or mental impairment, is unable to protect himself or herself from abuse, neglect, exploitation, sexual abuse, or emotional abuse by others, and who has no guardian, relative, or other appropriate person able, willing, and available' to assume the kind and degree of protection and supervision required under the circumstances.”
§ 38-9-2(2), Ala. Code 1975.
The drafters of the Act were keenly aware of the tensions between ensuring the public health and protecting individual liberties and expressed an intent to strike a balance between the two. The statement of legislative findings and intent in the Act provides that“[t]his chapter is designed to establish [protective] services and assure their availability to all persons when in need of them, and to place the least possible restriction on personal liberty and exercise of constitutional rights consistent with due prócess and protection from abuse, exploitation and neglect.” § 38-9-3, Ala. Code 1975. In that regard, and in addition to the promise in § 38-9-6(a), Ala. Code 1975, of a speedy jury trial, the Act requires a court to “give preference in making a determination to the least drastic alternative considered to be proper under the circumstances, including a preference for noninstitutional care whenever possible.” § 38-9-6(c), Ala. Code 1975. Further, the Act requires the court to obtain a “comprehensive evaluation of the adult in need of services,” id.; guarantees that “[n]o civil rights are relinquished as a result of any protective placement under this chapter,” § 38-9-6(i), Ala. Code 1975; and provides that, “[a]s far as is compatible with the mental and physical condition of the adult in need of services or claimed to be in need of services under this chapter, every reasonable effort shall be made to assure that no action is taken without the full and informed consent of the person.” § .38-9-6(3), Ala. Code 1975.
In this case, DHR sought , to establish that Nix was an adult in need of protective services, specifically protective placement in an assisted-living facility; that Nix was unable to, protect himself from abuse, neglect, or exploitation; and that, therefore, it, was entitled to a summary judgment. In support of its motion, DHR offered medical records and letters from three physicians who had personally examined Nix and who had each determined that Nix suffers from dementia and is, unable to care for himself and evidence indicating that Nix had fallen victim to a lottery scam. Nix countered this evidence by testifying that he was, in fact, capable of taking care of himself and not in need of protective services. He further testified that he could live .at .home with the aid of home-health services and thqt he ivas open to the appointment of a conservator to oversee his estate. The question directly before this Court, therefore, is whether Nix’s testimony established a genuine issue of material, fact precluding a summary judgment. It did.
In this case, from the evidence in the record, we fail to see how' the weighty issues before the court are fully resolved so as to entitle DHR to ,a judgment as a matter of law. Even if we agreed that Nix was an adult in need of protective services, there are, at the very least, questions of fact bearing on his need for protective placement and the “least drastic alternative” appropriate for Nix. Nix presented testimony concerning his abilities to live at home and to take care of himself, as well as testimony regarding his preference to remain in his home. That testimony was sufficient to establish a genuine issue of material fact. Accordingly, summary judgment was improper.
*458 Moreover, although we do not question that all involved in this case desire the best for Nix, we are troubled by the apparent lack of urgency and attention to statutory formalities in the prosecution of this petition for protective services. The trial court granted DHR’s emergency petition on December 7, 2015. Under the Act, Nix was entitled to a hearing within 30 days. Nevertheless, 7 months passed before the trial court entered the summary judgment finding Nix to be an adult in need of súpervision, and it is now more than 15 months since Nix was removed from his home. It may very well be that an assisted-living facility is the appropriate and lawful protective placement for Nix, but he is still entitled to all the procedural safeguards due him under the Act, including a timely adjudication of his need for such services. Indeed, without a faithful adherence to the Act and the due-process protections owed to each person protected by the Act, we risk unnecessary and wrongful deprivation of liberty and property. For those “protected persons” dispossessed of their house and their assets, this may seem a fate far worse than a foreign-lottery postal scam.
III. Conclusion
For the above reasons, the summary judgment, as well as the order authorizing the sale of Nix’s house, is reversed, and the case is remanded for the trial court to conduct, as soon as practicable, a formal hearing as required by § 38-9-6.
REVERSED AND REMANDED.
Stuart, Bolin, Parker, Murdock, Shaw, Wise, and Bryan, JJ., concur.

. Although no sworn, certified, or otherwise authenticated documents were attached to . DHR’s motion, Nix did not object to the admissibility of, or move to strike, any of the exhibits offered by DHR and does not argt|e on appeal that the trial court erred in considering those documents.

. No evidence of Nix’s assets was submitted.

. Although the trial court’s final order did not specifically provide for the appropriate placement of Nix, it is clear from the record and the testimony that the placement made the basis of the summary judgment was Nix's continued residence at the assisted-living facility. It is apparent from the record and submissions of the parties that the trial court and the parties considered the order a final disposition of all the issues pending before the trial court. Thus, we treat the order as a final order.

. Nix appealed to the Court of Civil Appeals. On March 15, 2017, the Court of Civil Appeals transferred Nix’s appeal to this Court on the basis that it had no subject-matter jurisdiction. We agree that appellate jurisdiction of this case properly lies in this Court. This appeal is from a final judgment in a civil action brought under the Act. The Act contains no specific provision concerning an appeal. Nevertheless, § 12-22-2, Ala. Code 1975, confers to all parties a right of appeal "to the appropriate appellate court” from any final judgment of the circuit court. This Court has been empowered to "exercise appellate jurisdiction coextensive with the state,” unless otherwise provided by law. § 12-2-7, Ala. Code 1975. The Court of Civil Appeals' appellate jurisdiction, on the other hand, is limited. That court "shall have exclusive appellate jurisdiction of all civil cases where the amount involved, exclusive of interest and costs, does not exceed $50,000, all appeals from administrative agencies other than the Alabama Public Service Commission, all appeals in workers' compensation cases, all appeals in domestic, relations cases, including annulment, divorce, adoption, and child custody cases and all extraordinary writs arising from appeals in said cases.” § 12-3-10, Ala. Code 1975. The present case is not one of the types of cases upon which appellate jurisdiction has been expressly assigned to that court by § 12-3-10. Accordingly, the Court of Civil Appeals properly transferred this appeal to this Court.