Rel: July 3, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

_____

## SC-2024-0810

_____

## 790 Montclair, LLC

## v.

## Birmingham Metro, LLC; The City of Birmingham; The Station at Crestline Heights, LLC; Valley National Bank; Alabama Hoops RE, LLC; FirstBank; Trinity Montclair 800, LLC; Trinity Montclair 820, LLC; and Birmingham Metro Baptist Association

### Appeal from Jefferson Circuit Court
### (CV-23-903446)

SELLERS, Justice.

790 Montclair, LLC, appeals from a summary judgment in favor of Birmingham Metro, LLC, and others in its action seeking to invalidate a subdivision plat known as the "Arbor Terrace Resurvey No. 1" ("the subdivision plat"), which was approved by the City of Birmingham Planning Commission ("the Commission").[1] We affirm.

## I. Facts

In 2020, Birmingham Metro purchased a 75-acre tract of real property, which encompassed a former medical center, with the intent of developing the property into a multiuse campus with residential, medical, and community-oriented retail and cafe spaces known as Crestline Heights. School Engineering Company, Inc., acting on behalf of Birmingham Metro, prepared the subdivision plat, the application for subdivision, and a list of adjacent property owners for notice and submitted them to the Commission for approval. It is undisputed that 790 Montclair was an adjacent property owner but that its name was not

---

[1]According to 790 Montclair, the other named appellees are entities that own property or have an interest in property embraced by or abutting the subdivision plat, as well as the City of Birmingham, which approved the subdivision plat through the Commission; those entities are: The Station at Crestline Heights, LLC; Valley National Bank; Alabama Hoops RE, LLC; FirstBank; Trinity Montclair 800, LLC; Trinity Montclair 820, LLC; and Birmingham Metro Baptist Association.

included on the notice list that Schoel submitted to the Commission. Thus, 790 Montclair did not receive actual notice of the public hearing on the proposed subdivision that occurred on November 18, 2020. Following the public hearing, there being no objections from the other adjoining property owners, the Commission unanimously approved the subdivision plat. It was subsequently recorded in the Jefferson County Probate Office on December 1, 2020. On September 27, 2023, 790 Montclair commenced an action pursuant to § 35-2-58, Ala. Code 1975,[2] seeking to annul or invalidate the subdivision plat based on its failure to receive written notice of the public hearing on the proposed subdivision. Both sides filed cross-motions for a summary judgment. Following a hearing, the trial court entered a summary judgment in favor of the defendants, finding, in relevant part, that 790 Montclair had failed to establish its claim to annul or invalidate the subdivision plat. This appeal followed.

## II. Standard of Review

This Court reviews a summary judgment de novo, and we use the same standard used by the trial court to determine whether the evidence

---

[2]Section 35-2-58, Ala. Code 1975, vests circuit courts with jurisdiction and power "to vacate and annul any map, plat, or survey of lands …."

presented to the trial court presents a genuine issue of material fact. Nettles v. Pettway, 306 So. 3d 873, 875 (Ala. 2020). "On motion for summary judgment the burden is upon the movant to show that no genuine triable issue of material fact exists." Amason v. First State Bank of Lineville, 369 So. 2d 547, 552 (Ala. 1979). In this case, both sides moved for a summary judgment on the issue whether Birmingham Metro had strictly complied with the requirements of the City's subdivision regulations and § 11-52-32(a), Ala. Code 1975, regarding notice to adjoining property owners. When cross-motions for a summary judgment are filed, "the burden remains on each movant to establish the propriety of the court entering summary judgment on its own motion." Id. "The fact that the first party fails to carry the burden on [its] motion does not necessarily mean that the other party has carried the burden under [its] own motion and should be granted summary judgment." Id. "Where cross-motions for a summary judgment are filed in the trial court, the party whose motion was not granted is entitled to have that motion reviewed on an appeal from the grant of the opponent's motion." Mountain Lakes Dist. v. Oak Grove Methodist Church, 126 So. 3d 172, 180 (Ala. Civ. App. 2013).

## III. Discussion

The dispositive issue presented in this appeal is whether 790 Montclair met its burden of demonstrating by substantial evidence that the subdivision plat at issue is due to be annulled or invalidated based on Birmingham Metro's alleged failure to strictly comply with the City's subdivision regulations and § 11-52-32(a) regarding notice to adjoining property owners.

A planning commission's power to regulate subdivisions is derived by statute. See § 11-52-31(a), Ala. Code 1975 ("[T]he municipal planning commission shall adopt subdivision regulations governing the subdivision of land within its jurisdiction."). "In exercising its function approving or disapproving any particular subdivision plat, [a planning commission] acts in an administrative capacity, and is bound by any limitations on its authority contained in the legislation authorizing it to act, as well as any restrictions contained in its own regulations." Boulder Corp. v. Vann, 345 So. 2d 272, 275 (Ala. 1977). Relevant here, Article 3.2(C) of the City's subdivision regulations provides that, to obtain a hearing on a proposed subdivision, "the subdivider shall submit" a "[l]ist of owners of property adjoining the proposed subdivision, with names and

5

addresses as shown in the County Tax Assessor's office." Similarly, § 11-52-32(a), regarding the procedure for approving or disapproving a subdivision plat, provides:

"[T]he municipal planning commission shall approve or disapprove a plat within 30 days after the submission thereof to it; otherwise, the plat shall be deemed to have been approved, and a certificate to that effect shall be issued by the municipal planning commission on demand; provided, however, that the applicant for the municipal planning commission's approval may waive this requirement and consent to an extension of such period. The ground of disapproval of any plat shall be stated upon the records of the municipal planning commission. Any plat submitted to the municipal planning commission shall contain the name and address of a person to whom notice of a hearing shall be sent, and no plat shall be acted on by the municipal planning commission without affording a hearing thereon. Notice shall be sent to the address by registered or certified mail of the time and place of the hearing not less than five days before the date fixed therefor. Similar notice shall be mailed to the owners of land immediately adjoining the platted land as their names appear upon the plats in the county tax assessor's office and their addresses appear in the directory of the municipality or on the tax records of the municipality or county."

(Emphasis added.)

This Court has not had the opportunity to address that portion of § 11-52-32(a) regarding notice to adjoining property owners. However, we have previously held that the "procedural requirements contained in statutes and regulations adopted pursuant to … enabling statutes" are

6

to be strictly construed. <u>Kennon & Assocs., Inc. v. Gentry</u>, 492 So. 2d 312, 317 (1986). In <u>Kennon</u>, this Court interpreted the notice requirements of a zoning ordinance mandating, in relevant part, that the Phenix City Building Department "'send, by registered mail, a letter notifying the adjacent property owners of the action pending.'" <u>Id.</u> at 315 (emphasis omitted). Because there were adjacent landowners who did not receive notice of the rezoning action by registered mail, the trial court entered a judgment invalidating the rezoning action. In affirming that judgment, this Court explained that, "where there had been a failure to strictly follow the procedural requirements applicable to the action sought, especially notice provisions, this Court has invalidated … the action taken, <u>irrespective of whether any person was prejudiced by the error or omission.</u>" <u>Id.</u> at 318. Relying on <u>Kennon</u>, 790 Montclair argues that the failure to provide notice of the public hearing in and of itself is sufficient to invalidate the subdivision plat in this case. 790 Montclair also posits that the only plausible meaning of the notice provision in the subdivision regulations is that, where land is to be subdivided, all owners of adjoining land must be provided notice of a public hearing to voice their objections. However, <u>Kennon</u> is distinguishable based on the language

7

of the zoning ordinance at issue in that case. In addition to the statutory notice requirements of § 11-52-77 and § 11-52-78, Ala. Code 1975, the zoning ordinance in that case mandated notice by registered mail to "'the adjacent property owners of the action pending.'" 492 So. 2d at 315 (emphasis omitted). The zoning ordinance did not specify where the list of adjoining property owners for notice was to be derived; rather, it placed a strict burden on the city to notify all adjoining property owners, presumably using its best efforts to ascertain their identities. Unlike the zoning ordinance in Kennon, the City's subdivision regulations in this case, as well as § 11-52-32(a), contain additional language regarding notice. Specifically, the subdivision regulations require that, to obtain a public hearing, the subdivider shall present a "[l]ist of owners of property adjoining the proposed subdivision, with names and addresses as shown in the County Tax Assessor's office." (Emphasis added.) Section 11-52-32(a) provides that similar notice "shall be mailed to the owners of land immediately adjoining the platted land as their names appear upon the plats in the county tax assessor's office and their addresses appear in the directory of the municipality or on the tax records of the municipality or county." (Emphasis added.) Thus, the subdivision regulations and § 11-

8

52-32(a) specify where the list of adjoining property owners is to be obtained and places the duty of acquiring that information on the subdivider to supply to the City. Although strict compliance with the notice requirements for zoning and subdivision hearings is critical, such compliance may vary depending on the specific language of the applicable regulation, ordinance, or statute. In this case, both the subdivision regulations and § 11-52-32(a) require notice only to the adjacent landowners as their names and addresses are shown in the county tax assessor's office or as their names appear upon the plats in the county tax assessor's office and their addresses appear in the city directory or on the tax records of the city or county, respectively. Thus, § 11-52-32(a) contemplates that adjoining-property-owner information may not always be available from the county tax assessor's office; in such a case, strict compliance with the statute is still possible. As Birmingham Metro points out, had the legislature intended for all adjoining property owners to receive notice of a public hearing, it could have drafted § 11-52-32(a) like the zoning ordinance at issue in <u>Kennon</u>. By failing to do that, it is clear, as indicated at oral argument, that the impact of a zoning ordinance, by restricting the use of large segments of property, is more

9

impactful. See <u>Roberson v. City of Montgomery</u>, 285 Ala. 421, 425, 233 So. 2d 69, 72 (1970) (noting that zoning and planning are not synonymous: "Broadly speaking, 'planning' relates to the systematic and orderly development of a community with particular regard for streets, parks, industrial and commercial undertakings, civic beauty and other kindred matters properly within police power. 'Zoning' is primarily concerned with the regulation of the use of property, to structural and architectural designs of buildings, and the character of use to which the property or the buildings within classified or designated districts may be put."). Thus, the notice requirements for a public hearing on a proposed subdivision mandated in the subdivision regulations and § 11-52-32(a), as strictly construed, merely require notice to adjoining landowners as their names and addresses appear on a database maintained by city and county officials.

In this case, both sides dispute whether 790 Montclair's ownership information, specifically its name and address, was available in the Jefferson County Tax Assessor's Office at the time Schoel generated its list of adjoining property owners to submit to the City in 2020. In support of its motion for a summary judgment, 790 Montclair relied on the

affidavit of one of its principles, Ryan Medo, who stated, in relevant part, that 790 Montclair purchased its parcel in December 2018 and that, since that time, he has received yearly tax notices from the county tax assessor's office. Medo attached to his affidavit a print out of a "Record Summary" from the "Jefferson County Tax Administration," which, he says, he obtained from the county's website in September 2024. The record summary indicates the ownership history for the 790 Montclair parcel for the tax years 2020 through 2025, specifically listing the parcel number, the owner of the parcel, and the address for the parcel. In response, Birmingham Metro asserts that, in 2020, it had no knowledge of 790 Montclair's identity and that 790 Montclair "glosses" over the fact that, to generate the record summary produced by Medo, one has to know that 790 Montclair is the property owner; otherwise, the record summary is not readily obtainable from the city or county records. 790 Montclair does not address Birmingham Metro's response. Rather, 790 Montclair states that it "disputes [that] assertion, … and there is no evidence in the record to support it." 790 Montclair's reply brief at 15 n.2. But that is incorrect, because, as indicated below, there is ample evidence in the record to support the assertion that, at the time the public hearing was

noticed, the city and county records did not list 790 Montclair as an adjoining property owner.

In fact, to support its motion for a summary judgment, Birmingham Metro relied on the testimony of its expert, Joseph F. Breighner, Jr., who served as the chief land surveyor for Schoel from 1998 until 2022. Breighner testified regarding the standards and practices applicable to surveyors within the City and the procedures generally followed by Schoel in the preparation of subdivision plats. Regarding notice, Breighner testified that the purpose of providing the Commission with a list of adjacent landowners is to notify those owners of public hearings on proposed subdivisions. He also stated that Schoel obtains adjacent-land owner information from the Jefferson County Tax Assessor's Office and that, if needed, Schoel also uses the City of Birmingham's "GIS" online mapping program, as well as an independent system referred to as the Jefferson County "Courthouse Retriever System," which requires a license to use. Breighner stated that Schoel's standard practice is to use all three systems to obtain adjacent-landowner information, unless that information can be found solely in the county tax assessor's records. Breighner finally stated that no one at Schoel has control over whether

12

the information contained in the tax assessor's office is correct. Thus, Birmingham Metro contends that the fact that 790 Montclair did not receive notice of the public hearing was not because of any act or omission of the part of Schoel but, rather, appears to be the result of issues contained within the records kept by Jefferson County and the City. By way of example, Birmingham Metro states that, when Schoel generated its list of adjoining property owners to submit to the City in 2020, the county tax assessor's records were completely devoid of any ownership information for 790 Montclair's parcel. Birmingham Metro also states that the City's "GIS online mapping system" contained only a parcel-identification number with no ownership or address information for 790 Montclair's parcel. Notably, Medo's deposition is also in the record and was summarized during the summary-judgment hearing. As indicated, 790 Montclair purchased its parcel in December 2018. In his deposition, Medo acknowledged that exhibit 29, a "tax map record" from the county tax assessor's office, dated March 27, 2018, listed no owner or address information for 790 Montclair's parcel. According to Medo, as part of the closing process, either he or his closing attorney would have updated 790 Montclair's ownership information with the tax assessor's office but that

13

he did not know "if it ever was not updated." Finally, Medo acknowledged that exhibit 31, another tax-assessor record dated August 2, 2024, listed no owner or address information for 790 Montclair's parcel.

Based on the foregoing, we conclude that 790 Montclair failed to meet its burden of demonstrating that Birmingham Metro, through Schoel, failed to strictly comply with the City's subdivision regulations or § 11-52-32(a) regarding notice to adjoining property owners. The print out of the record summary that Medo obtained from the "Jefferson County Tax Administration," without any specific information regarding how that report was generated, does not substantially demonstrate that 790 Montclair's name and address were available in the county tax assessor's office in 2020. As Birmingham Metro points out, to generate the record summary, one would presumably need to know 790 Montclair's identity to enter on the county's website. Furthermore, as noted, Medo acknowledged in his deposition that an August 2024 tax record from the county tax assessor's office listed no owner or address information for 790 Montclair's parcel. Thus, 790 Montclair was not entitled to a summary judgment as a matter of law. Birmingham Metro, on the other hand, offered substantial evidence indicating that Schoel had strictly complied

14

with the City's subdivision regulations and § 11-52-32(a) regarding notice to adjoining landowners. It seems apparent from the record that Schoel's chief land surveyor obtained a list of adjoining property owners strictly in accord with the City's subdivision regulations and § 11-52-32(a). As previously noted, the subdivision regulations required Schoel to provide a list of adjoining property owners with "names and addresses as shown in the County Tax Assessor's office." Section 11-52-32(a) required that similar notice "shall be mailed to the owners of land immediately adjoining the platted land as their names appear upon the plats in the county tax assessor's office and their addresses appear in the directory of the municipality or on the tax records of the municipality or county." Birmingham Metro's expert testified that Schoel's practice is to obtain adjacent-landowner information from the Jefferson County Tax Assessor's Office and that, if needed, he has two additional sources from which to access that information. There is no evidence to suggest that Schoel did not strictly comply the procedures mandated by the subdivision regulations or § 11-52-32(a) in obtaining adjoining-landowner information to submit to the City such that the recorded subdivision plat in this case should to be annulled or invalidated.

15

## IV. Conclusion

Birmingham Metro demonstrated by substantial evidence that Schoel had strictly complied with the City's subdivision regulations and § 11-52-32(a) regarding notice to adjoining landowners. Thus, the summary judgment in favor of the defendants is affirmed.

AFFIRMED.

Mendheim and McCool, JJ., concur.

Shaw and Wise, JJ., concur in the result.

Cook, J., concurs in the result, with opinion, which Stewart, C.J., and Lewis J., join.

Bryan, J., dissents, with opinion.

COOK, Justice (concurring in the result).

I agree with this Court's decision to affirm the summary judgment in favor of Birmingham Metro, LLC, and the other defendants. However, because I do not believe that 790 Montclair, LLC, had standing, I see no reason to reach the question of whether Birmingham Metro sufficiently complied with the relevant notice requirements. Therefore, I concur in the result.

In "public-law cases," such as this case, standing is a necessity for a court to obtain subject-matter jurisdiction. See Ex parte BAC Home Loans Servicing, LP, 159 So. 3d 31, 44 (Ala. 2013); State v. Property at 2018 Rainbow Dr., 740 So. 2d 1025, 1028 (Ala. 1999). To determine whether a plaintiff has standing, our courts employ the test set forth by the United States Supreme Court in Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 (1992). See Ex parte King, 50 So. 3d 1056, 1059 (Ala. 2010).[3]

_____

[3]I have previously questioned whether we should continue to follow Lujan. See, e.g., Hanes v. Merrill, 384 So. 3d 616, 623 (Ala. 2023) (Cook, J., concurring specially) (stating that "this Court should consider, in the right case, the proper standard for standing under the Alabama Constitution" and that we "should not simply adopt the federal standard without considering any relevant differences between the Alabama Constitution and the Constitution of the United States"). However, none of the parties in this case have questioned our Court's adoption of Lujan as a means of determining standing in Alabama. I therefore see no reason

Lujan requires plaintiffs to demonstrate the following:

> "First, the plaintiff must have suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."'' Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

504 U.S. at 560-61 (citations and footnote omitted; emphasis added).

790 Montclair fails the very first element of standing. Even today, it has not sufficiently identified an "actual, concrete and particularized 'injury in fact'" that it has suffered as a result of not receiving notice of the public hearing. Alabama Alcoholic Beverage Control Bd. v. Henri-Duvall Winery, LLC, 890 So. 2d 70, 74 (Ala. 2003).

For instance, at oral argument, 790 Montclair was directly asked: "If you had gotten notice, would you have opposed the subdivision plat?" Supreme Court of Alabama, Supreme Court O/A Montgomery, Alabama, YouTube (June 4, 2025, 2:27-2:30) (at the time this decision was issued,

_____

to consider the question of whether we should continue to follow Lujan or adopt a different test for standing.

this oral-argument session could be located at: https://www.youtube.com/watch?v=ZKZb0lZbatU) (emphasis added). In response, 790 Montclair made no claim that it would have opposed the subdivision plat. Instead, it merely answered that it was "entitled to notice, as a matter of due process, and an opportunity to be heard to voice any opinions, any objections, or <u>even support for the subdivision</u> ...." Supreme Court of Alabama, <u>Supreme Court O/A Montgomery, Alabama</u>, YouTube (June 4, 2025, 2:27-2:49) (at the time this decision was issued, this oral-argument session could be located at: https://www.youtube.com/watch?v=ZKZb0lZbatU) (emphasis added).

790 Montclair's answer actually suggests that it might have "support[ed]" the project. This is the exact opposite of an "actual, concrete and particularized 'injury in fact'" and is instead the absence of even an allegation of injury in fact. <u>See</u> <u>Kid's Care, Inc. v. Alabama Dep't of Hum. Res.</u>, 843 So. 2d 164, 167 (Ala. 2002) (dismissing an appeal because this Court "fail[ed] to see how the plaintiffs ha[d] been injured," explaining that, to establish standing, a plaintiff's injury must be "tangible" and that, when plaintiff "'has not been injured by the wrong alleged in the complaint, then no case or controversy is presented and the

19

plaintiff has no standing to sue on his own behalf ….'") (citation omitted).

This answer is consistent with 790 Montclair's briefs on appeal. At no point in those briefs does 790 Montclair point to any instance in the record where it stated any actual objection, on the merits, to the subdivision plat. See Ex parte BAC, 159 So. 3d at 40 ("'"In determining standing, the nature of the injury asserted is relevant to determine the existence of the required personal stake and concrete adverseness."'" (citations omitted; final emphasis added)).

In other words, even years after the public hearing was held, years after the approval of the subdivision plat, years after the filing of this lawsuit, and long after the project was actually completed, 790 Montclair cannot state that it would even have asked for anything different to have occurred at the public hearing.

790 Montclair insists that it does not need to show prejudice and can therefore proceed based on a purely procedural violation -- its failure to receive notice -- even if it might have actually supported the project. See Supreme Court of Alabama, Supreme Court O/A Montgomery, Alabama, YouTube (June 4, 2025, 8:27-8:31) (at the time this decision was issued, this oral-argument session could be located at:

20

https://www.youtube.com/watch?v=ZKZb0lZbatU) (citing <u>Kennon &</u>

<u>Assocs., Inc. v. Gentry</u>, 492 So. 2d 312 (Ala. 1986)).

790 Montclair misses the point. Standing is a constitutional requirement, and 790 Montclair must at least allege a concrete harm to bring a claim. It has not made such an allegation. In fact, not only has 790 Montclair failed to allege that it would have opposed the subdivision plat, it has also failed to allege that it would have <u>said anything</u> at the public hearing or that it would have <u>appeared</u> at the public hearing had it been given adequate notice.

790 Montclair asks our Court to direct the trial court to enter a judgment vacating the subdivision plat, thus requiring a new public hearing after the project has been completed -- without even supplying a reason -- a futile, meaningless act. This is contrary to common sense and our well-established caselaw.

And the equities are even worse. Here, the record indicates that 790 Montclair waited approximately seven months after construction on the subdivision began before it first complained about not receiving notice of the public hearing. This delay would also belie any claim of a "tangible" injury.

Because 790 Montclair fails to allege any "actual, concrete and particularized 'injury in fact,'" it has failed to demonstrate that it had standing to bring its suit below. It is for this reason that I would affirm the trial court's judgment in this case.

Stewart, C.J., and Lewis, J. concur.

BRYAN, Justice (dissenting).

I respectfully dissent. Under the relevant subdivision regulation for the City of Birmingham ("the City"), "[n]otice by certified mail to the subdivider and adjacent property owners, advising of the time and place of [a] hearing [on a proposed subdivision,] shall be mailed not less than seven days before the scheduled public hearing." Section 3.3, Subdivision Regulations of the City. The City obtains a list of adjacent property owners to whom notice is due from the subdivider proposing the subdivision; that subdivider must provide a "[l]ist of owners of property adjoining the proposed subdivision, with names and addresses as shown in the County Tax Assessor's office." Section 3.2.C., Subdivision Regulations of the City. In this case, it is undisputed that the plaintiff, 790 Montclair, LLC, was an owner of property adjacent to the proposed subdivision but was not given notice of the public hearing on the proposed subdivision. As I understand it, the key dispute is whether, when notice was required to be given in 2020, the records of the Jefferson County Tax Assessor identified 790 Montclair as an adjacent property owner and provided 790 Montclair's address. If the tax assessor's records identified 790 Montclair as an adjacent property owner and provided its address,

then certainly 790 Montclair would be entitled to notice under the regulation.  Because the record contains substantial evidence indicating that the tax assessor's records identified 790 Montclair as an adjacent property owner and provided its address at the relevant time, I would reverse the Jefferson Circuit Court's summary judgment entered against 790 Montclair.

790 Montclair relies on the affidavit testimony of Ryan Medo and  a document attached thereto ("the record summary"); Medo obtained the record summary by accessing records on the Jefferson County Tax Assessor's website.  Medo's affidavit states, in pertinent part:

"2.    I am a Manager of RTO I, LLC, which is the Manager of 790 Montclair.

"3.    790 Montclair is the owner of real estate located at 790 Montclair Road in Birmingham ('790 Montclair's Property') ….

"4.    790 Montclair's Property abuts and is adjacent to the property embraced by the [relevant] subdivision plat ….

"….

"5.    790 Montclair did not receive notice of the public hearing held on November 18, 2020, on the [relevant] Subdivision Application … either by certified mail or any other method.

"….

24

"9.   Attached hereto as Exhibit 1 is a copy of a Record Summary from Tax Year 2020 for 790 Montclair's Property which I obtained on September 6, 2024, from the Jefferson County Tax Assessor's Office through its online website https://eringcapture.jccal.org (the 'Record Summary').

"10.   According to the attached Record Summary, as of 2020 the Jefferson County Tax Assessor's records showed the Owner of 790 Montclair's Property was 790 Montclair LLC and the address was 790 Montclair Rd Ste 215, Birmingham, AL 35213.   This was the correct mailing address for 790 Montclair in 2020 and is currently the correct mailing address.

"11.   The attached Record Summary lists the Ownership History for Tax Years 2020 through 2025, and for each year shows the Entity Name as 790 Montclair LLC and the Mailing Address as 790 Montclair Rd Ste 215, Birmingham AL 35213.   The Tax Assessor's Record Summary lists the correct mailing address for each Tax Year from 2020 through 2025.

"12.   Since 790 Montclair's purchase of its property in December 2018, 790 Montclair has timely received a tax notice from the Jefferson County Tax Assessor's Office every year, and 790 Montclair has timely paid the taxes due."

The record summary obtained by Medo from the tax assessor's records identifies the parcel number for 790 Montclair's property, identifies 790 Montclair as the owner of that property, and lists 790 Montclair's mailing address.   As Medo further testified, the "ownership history" listed in the record summary indicates that 790 Montclair was

25

the owner of the property for each year between 2020 and 2025 and identified 790 Montclair's mailing address for each of those years. This is substantial evidence indicating that the tax assessor's records identified 790 Montclair as the owner of the relevant property and provided 790 Montclair's address.

The main opinion attacks this evidence by speculating about how the record summary was generated and by citing other evidence that the defendants believe undermine 790 Montclair's evidence. For example, the main opinion notes that "Birmingham Metro also states that the City's 'GIS online mapping system'[, which is one of the sources that Schoel Engineering Company, Inc., Birmingham Metro's agent, uses in attempting to locate adjacent landowners,] contained only a parcel-identification number with no ownership or address information for 790 Montclair's parcel." ___ So. 3d at ___.[4] It appears that the main opinion is weighing the evidence to determine which side has the stronger evidence. However, "[a]t the summary-judgment stage, it is not the trial

---

[4]If the City's GIS system contained the relevant parcel number, a reasonable inference may be drawn that the parcel number could have been used to identify the owner and address of the property in the tax assessor's records given that the record summary identifies the parcel number, the owner, and the owner's address.

26

court's function '"to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."'" Nix v. Franklin Cnty. Dep't of Hum. Res., 234 So. 3d 450, 456 (Ala. 2017) (quoting Camp v. Yeager, 601 So. 2d 924, 927 (Ala. 1992), quoting in turn Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Of course, in reviewing de novo the trial court's summary judgment, it is also not this Court's function to weigh the evidence to determine the truth of the matter; rather, we must evaluate whether there is a genuine issue of material fact. See Ex parte Rizk, 791 So. 2d 911, 912 (Ala. 2000) ("An appellate court reviewing a ruling on a motion for summary judgment will, de novo, apply the[] same standards applicable in the trial court."). Medo's affidavit and the attached record summary constitute substantial evidence indicating that the tax assessor's records identified 790 Montclair as an adjacent property owner and provided its address at the relevant time; that evidence creates a genuine issue of material fact regarding the information that was available in the tax assessor's records. Thus, I would reverse the trial court's summary judgment entered against 790 Montclair.